(July 31, 1922.)

FRANK SHORT, Appellant, v. JOHN M. PRAISEWATER and ETHEL PRAISEWATER, His Wife, Respondents.

[208 Pac. 844.]

SPECIFIC PERFORMANCE — ENTRYMAN ON GOVERNMENT HOMESTEAD — RIGHT TO CONVEY WATERS OF SPRING THEREON—WHEN WATERS OF SPRING ON GOVERNMENT LAND SUBJECT TO APPROPRIATION.

1. An entryman on a government homestead may, prior to patent, transfer by warranty against his own act a right to the use of the waters of a spring situate wholly upon such homestead entry, with a right of way over said entry for carrying such water to the place of intended use, such grant not being in contravention of U. S. Rev. Stats., sec. 2290, which requires a homestead entry to be made for the purpose of actual settlement and cultivation, and not directly or indirectly for the use or benefit of other persons.

2. The water of a spring situate wholly upon a government homestead entry is subject to appropriation for beneficial use, with the consent of the entryman.

APPEAL from the District Court of the Eighth Judicial District, for Benewah County. Hon. John M. Flynn, Judge.

Action for specific performance of an agreement to convey. From judgment for defendants, plaintiff appeals. *Reversed* and *remanded*, with instructions.

W. D. Keeton, for Appellant.

Upon reading the several acts of Congress it must be found to be the intention of the legislature to be most lib-

·eral in extending to all persons the right to use water on public lands, and to secure to them this right as against the settler when the use is for a beneficial purpose, and the act, sec. 2288, Rev. Stats., in effect declares it was not the intention of Congress to bar the settler from making those reasonable and necessary transfers and granting those privileges for easements subject to which every person holds his property. (*United States v. Reed,* 28 Fed. 482; *Methow Cattle Co. v. Williams,* 64 Wash. 457, 460, 461, 117 Pac. 239.)

Springs may be appropriated as water in a watercourse, and when a spring furnishes a stream of water that rises to the surface the right of appropriation attaches. (Wiel, Water Rights, sec. 92; *Wilkins v. McCue,* 46 Cal. 656; *Shenandoah Min. etc. Co. v. Morgan,* 106 Cal. 409, 39 Pac. 80; *Brosnan v. Harris,* 39 Or. 148, 87 Am. St. 649, 65 Pac. 867, 54 L. R. A. 628.)

"The fundamental and only restrictions . . . . imposed on ·a *bona fide* homesteader by the act of Congress are that he shall enter upon the land for his own exclusive use, and with the honest purpose and intention of residing upon and cultivating it for five years." (*Grubbs v. United States,* 105 Fed. 314, 44 ·C. C. A. 513; *King-Ryder Lumber Co. v. Scott,* 73 Ark. 329, 84 S. W. 487; 70 L. R. A. 873; *St. Louis Min. & Mill. Co. v. Montana Min. Co.,* 171 U. S. 650, 655, 19 Sup. Ct. 61, 63, 43 L. ed. 320, 322; *Orrell v. Bay Mfg. Co.,* 83 Miss. 800, 36 So. 561, 70 L. R. A. 881.)

A prescriptive right is acquired in Idaho in five years to the use of water. (*Brossard v. Morgan,* 7 Ida. 215, 61 Pac. 1031; Wiel on Water Rights, 3d ed., p. 629, sec. 583.)

Where the question of public policy under the United States statutes is not involved, an agreement like in the case at bar should be specifically enforced. (C. S., sec. 7975; *Stowell v. Tucker,* 7 Ida. 312, 62 Pac. 1033; *Francis v. Green,* 7 Ida. 668, 65 Pac. 362; *Barton v. Dunlap,* 8 Ida. 82, 66 Pac. 832; *Fleming v. Baker,* 12 Ida. 346, 85 Pac. 1092.)

A license will be enforced in equity where valuable improvements have been made. (*Rerick v. Kern,* 14 Serg. & R. (Pa.) 267, 16 Am. Dec. 497; *Stoner v. Zucker,* 148 Cal. 516, 113 Am. St. 301, 1 Ann. Cas. 704, 83 Pac. 808.)

The appropriation of the water was expressly authorized by the United States government, and whatever rights respondent had were sold for a valuable consideration by him to appellant. (*Maffet v. Quine,* 95 Fed. 199.)

The time fixed for respondent to make the conveyance was proper, for had the respondent for any reason failed to complete his homestead entry appellant would hold under grant from the United States. (*Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76.)

Title to land is in no way concerned. (Wiel, Water Rights, 3d ed., sec. 281.)

W. F. McNaughton and Post, Russell & Higgins, for Respondents.

In the absence of a written agreement subscribed by the parties sought to be charged, another person cannot acquire any right in the land of another or any water in the land of another, and any right that such person has to take water and cross the land, as in this case, is permissive, and may be revoked at will. (*Marshall v. Niagara Springs Orchard Co.,* 22 Ida. 144, 125 Pac. 208.)

Under the law of the United States existing at that time, the respondent could not make a contract that alienated the whole or any part of his homestead claim or any interest in said land. (*Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, 34 L. ed. 272; *Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97; *Bailey v. Sanders,* 228 U. S. 603, 33 Sup. Ct. 602, 57 L. ed. 985; *Cascade Public Service Corp. v. Railsback,* 59 Wash. 376, 109 Pac. 1062; *Armstrong v. Henderson,* 16 Ida. 566, 102 Pac. 361; *Jackson v. Baker,* 48 Or. 155, 85 Pac. 512.)

The contract sought to be enforced by the plaintiff is void as being against the public policy of the United States. (*McCrillis v. Copp,* 31 Fla. 100, 12 So. 643; *Kine v. Turner,*

27 Or. 356, 41 Pac. 664; *Horseman v. Horseman,* 43 Or. 83, 72 Pac. 698; *Robinson v. Jones,* 31 Neb. 20, 47 N. W. 480; *Carley v. Gitchell,* 105 Mich. 38, 55 Am. St. 428, 62 N. W. 1003; 13 C. J. 507; *Adams v. Church,* 193 U. S. 510, 24 Sup. Ct. 512, 48 L. ed. 769.)

LEE, J.—This action was commenced to enforce specific performance of an agreement to convey a perpetual right to the use of the waters of a spring on respondents' premises, with a right to use fifty feet square upon which said spring is situated, and an eight-foot right of way over respondents' land extending from said spring to the lands of appellant, along the pipe-line laid by appellant to carry said water, with a right of ingress and egress over respondents' lands, and the use of said lands for the purpose of repairing and improving the facilities for the use of said water, and an injunction perpetually restraining respondent and all other persons from in any manner interfering with the right of appellant to the use of said water, and to quiet appellants' title to said use.

The cause was tried by the court, and it found that in April, 1911, the defendant John M. Praisewater, respondent herein, agreed to sell to plaintiff, appellant herein, the exclusive right to use the water of that certain spring situate on the NE. ¼ of Sec. 6, T. 43 N., R. 4 W., B. M., Benewah county, Idaho, with the right to pass over and use fifty feet square in the center of which said spring is situated, and the right to pass over and use a tract of land eight feet wide and about five hundred feet long, extending from said spring in a southeasterly direction to appellant's land, which adjoins respondents' land on the east; that said parties agreed that appellant should have the permanent and continual use of the water from said spring and the permanent and continual right to pass over and around the same on said fifty-foot square of land, and the tract eight feet wide extending about five hundred feet southeasterly from said spring to appellant's land, and gave appellant a permanent, continuous and exclusive right of ingress and egress from

and to said spring, over and along said strip, with a right
to fence the same for the purpose of protecting said spring,
and that appellant paid the agreed purchase price of $100
in full consideration for the same; that at the time of said
sale, respondent held said land upon which this spring is
situate under a government homestead entry, and had fur-
ther agreed that as soon as patent was issued to him from
the United States, he would convey said right to said spring
and the right to use the land described as a right of way,
by good and sufficient deed of conveyance, to appellant; that
at the time of making said agreement to purchase, about May
9, 1911, appellant went into possession of the spring and
the land leading to and about the spring, and that respond-
ent aided appellant in cleaning out the spring, boxing the
same, and laying an underground pipe from the spring
across said right of way to appellant's land for the pur-
pose of conveying the water of the spring to appellant's
premises; and that ever since, until about November, 1919,
appellant has been in peaceful possession of said spring,
under a claim of right to use the water and the fifty foot
square around the spring and the eight-foot strip of land
for right of way, and the same has never been inclosed by
appellant, nor has he paid any taxes on the same, but dur-
ing all of said time has used the water of said spring for
domestic purposes, carrying said water over this right of
way, and has continuously passed to and from said spring;
and further, that respondent did not make final proof on
his homestead entry until 1917, and patent was issued in
January, 1918; that after receiving patent he married re-
spondent Ethel Praisewater; that appellant is the owner of
the NW. ¼ of Sec. 5, T. 43 N., R. 4 W., B. M., in said
Benewah county, which adjoins the land of respondent,
upon which said spring is located; and that in October,
1919, appellant demanded of respondent a deed of convey·
ance in accordance with the said sale agreement, but such
demand was refused, and respondent previous to the com-
mencement of this action cut the pipe-line and stopped the  ·

flow of the water to appellant's land, and refuses appellant the right to the use of the water of said spring.

From these findings the court concluded that appellant had not obtained title by adverse possession, on account of any of the transactions mentioned, and that the agreement made between appellant and respondent was contrary to law and the statutes of the United States, in that it was an agreement by a homestead entryman made prior to final proof or receipt of patent to convey an interest in a homestead, and was unenforceable against respondents or either of them, and entered a decree dismissing appellant's action, from which judgment this appeal is taken. Therefore this appeal presents the single question of law: Under the facts found by the court, which are fully sustained by the evidence, can an entryman upon a government homestead convey to a stranger to the entry a right to the use of the water of a spring situate wholly upon such entry, with a right of way over the premises, to develop and put to a beneficial use upon other lands, the water of such spring?

Respondent contends that his agreement to convey a right to the use of the water of this spring, with the necessary right of way for its use elsewhere, and all subsequent proceedings which he thereafter permitted and aided appellant to do in order to initiate and perfect appellant's right to the use of the water of this spring and to conduct the same over respondent's homestead to appellant's land and thereby apply the same to beneficial use, is in contravention of U. S. Rev. Stats., sec. 2290, which requires the applicant for a homestead entry, among other things, to make affidavit that: "Such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, persons or corporation; . . . . that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatsoever, by which the title which he or she might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person, ex-

cept himself or herself''; and U. S. Rev. Stats., sec. 2291, which prescribes the time and manner of final proof, and requires the applicant to make affidavit that: ''no part of such land has been alienated, except as provided in sec. 2288.'' He relies upon the doctrine announced in *Anderson v. Carkins*, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. ed. 272, which was a proceeding in error to the supreme court of Nebraska to review a decree of that court upholding a decree for specific performance of a contract for the sale of public land, made before it was acquired as a homestead. The defendant in error sought to enforce by specific performance the agreement by Anderson and wife to convey the premises in question, and they resisted its enforcement on the ground that the contract was against public policy and void, for the reason that at the time of its execution the land belonged to the general government, and that it was made in contemplation that Anderson would take the land as a homestead; that he subsequently did so, and obtained title from the government, and refused to convey. The court, speaking through Brewer, J., held that where a state court holds a provision against alienation of a homestead invalid, contrary to the federal homestead act, it presents a federal question, and under the facts of that case, the contract for sale of a part of the homestead entry was void as being against public policy and could not be enforced. This case and later cases in harmony with it are reviewed in *Williams v. Sherman, ante,* p. 169, 205 Pac. 259, and as said in the concurring opinion, this court is in accord with the holding of those federal authorities, and in any event, in this class of cases is bound by them.

We think, however, that there is a well-defined distinction between the interest attempted to be conveyed in those cases, and that in the one at bar. In actions where the federal courts have denied the right to compel specific performance, the conveyance has been either an absolute transfer of the entire interest of the entryman in a part of his homestead entry, or a conveyance of such a qualified interest as might become absolute. *Cascade Public Service Corp. v. Railsback,*

59 Wash. 376, 109 Pac. 1062, is more nearly analogous in its facts to case at bar than any of the others, and was an attempt on the part of the entryman to convey such a substantial interest in the premises that the court held the agreement not enforceable under the federal statute above referred to. However, in the later case of *Methow Cattle Co. v. Williams,* 64 Wash. 457, 117 Pac. 239, that court said that permission to cross a homesteader's land with an irrigation ditch, in consideration of the use of water therefrom, is not an alienation of the land.

Since *Anderson v. Corkins, supra,* was decided, in 1890, Congress has modified U. S. Rev. Stats., sec. 2288, upon which it was in part founded. As the statute then stood, it limited the conveyances which a homesteader might make to: "Any portion of his pre-emption or homestead for church, cemetery or school purposes, or for the right of way of railroads across such pre-emption or homestead."

But the amendments of act of March 3, 1891, and act of March 3, 1905, extended the statute to include additional purposes, and the section now reads: "Any *bona fide* settler under the pre-emption, homestead or other settlement law shall have the right to transfer, by warranty against his own acts, for church, cemetery or school purposes, or for the right of way of railroads, *telegraph, telephones, canals, reservoirs, or ditches, for irrigation or drainage across it;* and the transfer for such public purposes shall in no way vitiate the right to complete and perfect the title to his claim."

The reservation now contained in all patents to public lands under any of the several public entry statutes of the government is as follows: "Subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes and rights to ditches and reservoirs used in connection with such water rights as may be recognized by the local laws, customs and decisions of courts, etc."

U. S. Rev. Stats., sec. 2339, reads: "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested

and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

In *Jennison v. Kirk*, 98 U. S. 453, 25 L. ed. 240, it is held that this last provision confers no additional rights upon owners of ditches subsequently constructed, but merely confirms rights previously acquired and recognized by local customs, laws, and decisions of courts, and provides that whenever thereafter any person, in the construction of any ditch or canal, injures or damages the possession of a settler on the public land, the settler shall be compensated for such damage. In the instant case, the parties mutually agreed as to the compensation for the right to the use of this water and the right to run it across respondent's land.

In view of these provisions of the federal statute, and of the general policy of the government, which has been to aid the states and the citizens thereof in making the largest possible use of the public water of such state for beneficial purposes, we conclude that it was not the purpose of Congress in passing the restrictive measures contained in U. S. Rev. Stats., secs. 2290 and 2291, to prohibit an entryman from agreeing to permit the use of his entry for the purposes of developing water upon or conveying it across such entry for beneficial purposes. A contrary rule might frequently result in creating an impassable barrier between an important source of public water and the place where it might be used.

Considering this question as to whether under the laws of this state this spring was a source from which a valid water appropriation might be made, and as to whether or not appellant has perfected a valid appropriation under the

local laws, customs and usages prevailing in this state, we conclude that both requirements have been met.

C. S., sec. 5556, makes all the waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state, the property of this state. This provision is in harmony with art. 15, sec. 1, of the constitution. (*Adams v. Twin Falls-Oakley Land & Water Co.,* 29 Ida. 357, 161 Pac. 322.)

C. S., sec. 5562, provides that: "All ditches now constructed or which may hereafter be constructed for the purpose of utilizing seepage, waste or spring water of the state, shall be governed by the same laws relating to priority of right as those ditches, canals and conduits constructed for the purpose of utilizing the waters of running streams."

C. S., sec. 5558, provides that: "The right to the use of the waters of rivers, streams, lakes, springs and of subterranean waters, may be acquired by appropriation."

C. S., sec. 5569, provides the method for regulating the use of public waters, and establishing by direct means the property right to such use, by any person or corporation hereafter intending to acquire the right to the beneficial use of the waters of any of the natural streams, springs or seepage waters, etc.

It is clear from these provisions of the statute that the water of natural springs is public water, and is subject to a valid appropriation for a beneficial use. (*Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76; *Youngs v. Regan,* 20 Ida. 275, 118 Pac. 499; *Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73.)

The provision of C. S., sec. 5556, which declares all the waters of the state, when flowing in their natural channels, including the waters of all springs and lakes within the boundaries of the state, to be the property of the state, being in harmony with art. 15, sec. 1, of the constitution, this right of the state was recognized by the act of Congress admitting the state into the Union, which thereby confirmed this provision of the constitution the people of the state had formed, and consented to such appropriation by

the state. (*Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 87 Am. St. 918, 61 Pac. 258, 50 L. R. A. 747.)

The trial court finds that appellant, for value, purchased from respondent the right to the use of the water .of this spring in question, that with the active assistance and co-operation of respondent the spring was further developed by placing therein two sets of boxing four by four by six feet .deep, and ·by means of an underground pipe this water was conveyed to appellant's premises, and that he used the same continuously and uninterruptedly, without his right to do so being questioned, for a period of more than eight years. Without respondent's consent, appellant could not have entered upon his premises and initiated a valid appropriation to this spring, which did not flow sufficient water to create a natural stream that ran beyond the lines of respondent's premises. But appellant, after having.acquired the right to develop this spring, and after having dedicated the waters of such spring to the highest beneficial use known to the law, that is, domestic use, his continued and uninterrupted use of this water for a period of more than five years constitutes a valid appropriation, and gives him a right to the use of the water as against respondent, and constitutes a valid appropriation of the water of this spring as against all other persons. (*Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Sand Point Water etc. Co. v. Panhandle Dev. Co.,* 11 Ida. 405, 83 Pac. 347; *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; *Furey v. Taylor,* 22 Ida. 605, 127 Pac. 676; *Crane Falls Power etc. Co. v. Snake River Irr. Co.,* 24 Ida. 63, 133 Pac. 655.)

*Le Quime v. Chambers, supra,* approves the rule announced in *Maffet v. Quine,* 93 Fed. 347, wherein it is said: "When land included in a railroad grant reverts to the government, a subsequent patentee under the homestead laws takes the title subject to the right of way for a ditch or canal over it which was acquired prior to his entry; and it is immaterial whether the appropriation was made prior or subsequent to the time the government was reinvested with title."

In that case, a right of way for a canal over this land was acquired while it was held by the railroad company under a grant which was subsequently forfeited, and thereafter title thereto was acquired by Quine under the homestead act. He claimed that his entry was not subject to any rights that could have been acquired while it was held under the railroad grant. But the court dismissed this contention, and said that the title and all right and interest relating to this land were either in the railroad company or in the government at the time the flume was built, and the appropriation was acquiesced in by the railroad company and expressly authorized by the government, thus recognizing that one holding government land under a defeasible title, such as a railroad grant or homestead entry, may by acquiescence consent to a third party acquiring a right of way for a ditch or canal, and that after such right once attaches, it will not be divested by the reversion of the land to the government and a subsequent location by another entryman.

In the Le Quime-Chambers case, this court held that where seepage and percolating waters gravitate to and collect at a definite point in sufficient volume to be known and designated as a spring, and are found upon public domain, they are subject to location and appropriation for any useful or beneficial purpose, and are therefore protected and reserved from future disposition under the act of Congress, U. S. Rev. Stats., sec. 2339, citing in support thereof *Katz v. Walkinshaw*, 141 Cal. 116, 99 Am. St. 35, 70 Pac. 663, 64 L. R. A. 236, and opinion in same case on rehearing, 74 Pac. 766; *Cohen v. La Canada Land & W. Co.*, 142 Cal. 437, 76 Pac. 47; *Sullivan v. Northern Spy Mining Co.*, 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186.

It follows from what has been said that the judgment of the court below should be reversed and the cause remanded, with instructions to the trial court to enter a decree as prayed for in appellant's complaint, and it is so ordered. Costs awarded to appellant.

Rice, C. J., and McCarthy and Dunn, JJ., concur.