(September 29, 1911.)

## EMMA C. YOUNGS, Appellant, v. DANIEL REGAN, Respondent.

[118 Pac. 499.]

WATER RIGHTS—SPRING—ARTESIAN WELL—APPROPRIATION OF WATER—
PERMIT—STATE ENGINEER—PRIOR APPROPRIATION.

(Syllabus by the court.)

1.  Where one enters land under the desert land laws of Congress, on which is situated a spring and an artesian well, which well was constructed prior to the entry of such land for the purpose of increasing the flow of the water, and the water was used for watering stock, and the one who made the well thereafter sold his interest in said well to the entryman and she made application of the water to the desert land so entered by her for growing crops thereon, *held*, that her appropriation is as valid as though she had made application to the state engineer for a permit to appropriate the same.

2.  The state engineer has no power or authority to interfere with vested rights or to grant a permit for the appropriation and diversion of water where the same has already been appropriated and applied to a beneficial use.

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County. Hon. Edward A. Walters, Judge.

Action to quiet title to certain water. Judgment for defendant. *Reversed.*

J. C. Rogers, for Appellant.

The only restriction placed upon the use of water under the constitution and laws of this state seems to be the solitary one that the use must be beneficial, and that water appropriated and applied to a certain beneficial use can thereafter be taken and applied to any other use whatever, providing the same be a beneficial use. (*Davis v. Gale*, 32 Cal. 26, 91 Am. Dec. 554, 4 Morr. Min. Rep. 604.)

Longley & Hazel, for Respondent.

The defendant, proceeding strictly under the laws of the state in an effort to use the unappropriated water of the state, was clearly within his rights, and nothing this plaintiff could do after the issuance of a water permit could in any way change or lessen defendant's right thereunder. (*Neilson v. Parker*, 19 Ida. 727, 115 Pac. 488.)

SULLIVAN, J.—This is an action brought by the appellant, who was plaintiff, to restrain the respondent, who was defendant, from diverting water from the lands of appellant and from an order made and entered therein overruling appellant's motion for a new trial.

The appellant in her amended complaint alleges that she and her grantors and predecessors in interest, for more than ten years prior to the time of the commencement of this action, were the owners, in the possession of, and entitled to the possession of, the tract of land described in said complaint, and the right to use for the irrigation of the same the entire flow of the waters of a certain spring called "Little Wild Horse Spring" or "Pipe Spring," and also to two certain

artesian wells situated near said spring, and upon said land, and that she, through her grantors and predecessors in interest, had, during a period of more than ten years prior to the commencement of said action, used the flow of said spring and one of the wells; that in the month of June, 1909, the respondent, without her consent and against her will, interfered and interrupted her use of such waters, broke her dams and ditches and proceeded to construct dams and ditches of his own on the grounds of appellant, and thereby diverted the water away from her land, and respondent threatens to continue to do so. Appellant prays for judgment restraining defendant from interfering with said water.

In his answer the respondent denies that appellant owns said land or the right to the use of said water; denies that she is the owner or appropriator of said Little Wild Horse or Pipe Spring, or the said artesian wells; denies that she ever used said water for the irrigation of said land or for stock or domestic purposes; admits that he constructed on appellant's said land dams and devices for the diversion of said water and diverted the same from appellant's land to and upon his own land, and seeks to justify himself for so doing under and by virtue of a permit issued from the state engineer's office to one T. J. Woods, bearing the No. 2477; admits his intention to continue said diversion. Respondent also filed a cross-complaint, setting up his ownership of certain lands situated about a half mile from said spring, and alleges that he is the owner of a certain permit from the state engineer's office, it being the one issued to said Woods, authorizing him to enter upon appellant's premises to construct works for the diversion of water therefrom, the same bearing date of December 29, 1906. All of the allegations of the cross-complaint were denied.

Upon the issues thus framed the case was tried to the court without a jury and resulted in a judgment in favor of the respondent.

The following facts appear from the record: In the year 1896, A. D. Norton, who was then engaged in the business of cattle raising in the vicinity of said spring and who was run-

ning large herds of stock on the range in that vicinity, for the purpose of obtaining more water than the spring produced, sunk an artesian well within a few feet of such spring, upon what is now appellant's land, to the depth of 138 feet, and struck a stream of artesian water of from five to ten inches in volume, which flowed to the surface and more than doubled the capacity of said spring. The water flowing from said artesian well was for many years thereafter used by A. D. and L. H. Norton for the purpose of watering their livestock and was of value to them for such purpose. The water ran away from said well for some distance and other people's stock watered at the well besides the Nortons'. A. D. Norton died some time after the year 1905, and L. H. Norton became the administrator of his estate. In September, 1905, the appellant entered the land on which said spring was situated under the desert land laws, and on November 19, 1909, she made her final proof for the lands described in the United States land office at Hailey. Prior to 1905 appellant took possession of said land and in the following year purchased all of the right, title and interest of L. H. Norton in and to said artesian well and said spring and the water flowing therefrom, and took a deed of conveyance therefor. She purchased the water for the purpose of using the same on her desert land and used the same for such purpose until prevented from doing so by respondent. In May or June, 1909, she sunk the second artesian well, which increased the flow of water, and she used the water from the second well. In the year 1906 or 1907, she constructed a ditch leading from said spring and wells to her land and cleared and plowed some of it and put in a crop and used said water in the irrigation of said crop. One T. J. Woods filed an application with the state engineer for a permit to appropriate the water of said spring and well on December 29, 1906; said application was approved by the state engineer and by such approval said Woods was required to begin work for the diversion and application of said water on or before February 27, 1907, and to "continue diligently and uninterruptedly to completion, unless temporarily interrupted by circumstances over which permit-holder has no con-

trol.'' The evidence shows that he did but a few hours' work on the construction of the irrigation system required from the date of granting the permit up to the time he sold his right on May 4, 1909, to the respondent. After respondent had purchased whatever right Woods had in and to said permit and water right, he plowed a small ditch from the channel through which the water flowed, and conducted some of the water, at least, upon his land and put in some diversion works.

From these facts the district court found that the appellant entered said land as a desert land claim in the month of September, 1905, and that said spring was located on said land; that on December 29, 1906, the state engineer issued a water permit to Woods covering the water from said spring; that said water permit and the rights thereunder were duly transferred to the respondent, and that the respondent proceeded under said permit and diverted and used said waters; that no use was made of said water or any portion thereof by the appellant prior to the issuance of said water permit, and as a conclusion of law found that she was not entitled to said water and that the respondent was entitled thereto.

The evidence is uncontradicted on the point that A. D. Norton drilled or made the first artesian well in or near said spring and increased the flow thereof, and that he used the water for a beneficial purpose for watering his stock for a number of years; that the administrator thereafter sold whatever rights he had to the appellant; that she entered the land on which said spring and wells were situated and procured title thereto from the government of the United States; that she had plowed at least seventeen acres on said land and cropped the same and irrigated it with the water from said spring and artesian wells. From those facts it is clear that she was the first appropriator of said water and is entitled to it. It would appear to us that the trial court has given too much weight to the engineer's ''permit'' to Woods, and virtually held that his permit gave a better right to the respondent than the actual diversion and application of the water did to the appellant, regardless of the fact that Woods had failed to

comply with the terms of said permit, in that he failed to do anything toward the construction of diversion works to divert said water.

In *Neilson v. Parker,* 19 Ida. 727, 115 Pac. 488, this court held that the state engineer has no right, power or authority to interfere with vested rights or to grant a permit for the appropriation and diversion of the water of a stream where the same has already been diverted and applied to a beneficial use, and that where one actually diverts the water of a stream and applies the same to a beneficial use, although he has never applied to the state engineer for a permit to do so and has never procured either a permit or a license from the state engineer, still his right is superior and paramount to any right that a subsequent appropriator can procure, even though the latter secure a permit from the state engineer to appropriate and divert the water of the stream.

It appears that the appellant was the owner of the land on which said spring and artesian wells were constructed; that her predecessor constructed one of said wells and she paid $250 therefor, and that she constructed the other; that the one she constructed was more than 100 feet deep and she paid $2.50 a foot for the construction of it; that she had the title in fee to said land at the time the respondent purchased all the rights that Woods had under said permit, and in order to conduct the water from said spring and wells the respondent committed a trespass in going upon the appellant's lands without her consent to construct diversion works. The facts and evidence are all with the appellant.

The judgment of the trial court must be reversed, and it is so ordered, and the cause remanded for a new trial in accordance with the views expressed in this opinion. Costs are awarded in favor of appellant.

Stewart, C. J., and Ailshie, J., concur.